No. 30,583.

DELLA TRACY, *Appellant*, v. MINNIE THATCHER, formerly MINNIE TRACY, *Appellee*.

(11 P. 2d 691.)

Opinion filed June 4, 1932.

*George McGill, H. C. Castor, Victor J. Rogers* and *J. Harold Jorgensen,* all of Wichita, for the appellant.

*Donald Muir,* of Anthony, and *Adrian S. Houck,* of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from the order of the trial court sustaining a demurrer to the evidence of the plaintiff in an action to set aside a certain deed executed by her husband, now deceased, three days before his marriage to her, attempting thereby to convey a quarter section of land in Harper county to the defendant herein, his daughter by a former marriage.

The petition in two counts pleads the invalidity of the deed and grounds for setting it aside, first, for want of delivery, and second, because the deed was fraudulently executed three days before their marriage, fraudulently concealed from her during their marriage and for the fraudulent purpose of depriving her of her marital rights in and to one-half of the property of her husband. The defendant in answer to the petition admitted the relation of the parties and the execution of the deed but denied all other allegations. The appellant does not seriously press the first point on the failure of delivery except as it relates to and supports the allegations of fraud in the second count. The trial court made findings in the form of an opinion and held there was a valid delivery and that the evidence of the plaintiff failed to show any fraud and after sustaining the demurrer to the evidence rendered judgment for defendant.

Appellant assigns errors which can be grouped in two classes: refusing to consider the failure to record the deed as evidence of

fraud and excluding certain evidence offered by plaintiff; and second, sustaining the demurrer to the evidence and ruling that fraud of the plaintiff's marital rights had not been shown.

Plaintiff and deceased had both been married before and both had grown-children. She owned her residence property in Wichita and about $6,700 cash in bank which she had inherited from her former husband and her father. He owned this quarter section of land in Harper county and cash in bank from sale of personal property and an earlier deposit amounting to about $6,400, besides $1,200 in government bonds kept at the bank. Three days before they were married on December 10, 1918, the deceased went to his banker, Mr. Banta, in Harper county, and told him his intention to marry and that he wanted to convey this land to his daughter Minnie, who lived out home with him and who had no means of support unless he took care of her. The banker explained to him the necessity of making a delivery of the deed in order to make the transaction valid and binding, and after executing the deed he delivered it to the banker, who put it in an envelope with her name indorsed thereon and kept it for her among their papers of that kind and would not have returned it to the grantor or delivered it to anyone except the daughter, and did deliver it to her a few days before the death of her father, which occurred on October 18, 1928, and it was recorded October 5, 1928. After the marriage the husband left his farm in Harper county and lived with the plaintiff in her home in Wichita, where they lived together until his death almost ten years later. During this time he regularly received all the rent from the farm, paid the taxes thereon and withdrew from the Harper county bank all of his deposit therein, including the proceeds from the sale of the government bonds.

Plaintiff attempted to show, and did show, that she paid the taxes on her home property, helped purchase an automobile and loaned her husband $1,500, and offered to show that she gave and loaned to her husband during these ten years of married life many sums, but the court excluded most of it, and in ruling upon the objection thereto indicated that such evidence did not tend to show the conveyance to the daughter was in fraud of the marital rights of the plaintiff.

Appellant cites *National Bank v. Jaffray,* 41 Kan. 694, 21 Pac. 242; *Wafer v. Harvey County Bank,* 46 Kan. 597, 26 Pac. 1032;

*Cox v. Cox,* 39 Kan. 121, 17 Pac. 847, and *Belknap v. Sleeth,* 77 Kan. 164, 93 Pac. 580, in support of her contention, but they all relate to fraud of creditors and hold in a general way that even among creditors the failure to record a deed or chattel mortgage promptly standing alone and disconnected with other suspicious circumstances is not sufficient evidence of fraud. In this case the action of a dependent daughter in receiving a deed, even if it might be a disproportionate share, could not be considered fraud on her part, and she alone was responsible for the delay in recording the deed. In the Wafer case, *supra,* it was not so much the failure to record the chattel mortgage as it was concealing the fact of its having been given when its holder was in confidential conferences with other creditors which the court emphasized in considering that fact as a circumstance showing fraud. In the last case above cited, a nonresident interested party refused to testify concerning his connection with a transaction alleged to be fraudulent, and his attitude and conduct were regarded as proper circumstances for consideration as to the existence of fraud.

The delivery of the deed by the owner to the banker for delivery to his daughter, as shown by the evidence, was unconditional and such as to part with the control thereof by him and to constitute a valid delivery under the authorities, regardless of when it may have been recorded. And as fraud must be proved and not presumed, it is mainly those surrounding circumstances that are peculiar, unusual or suspicious that are to be considered as tending to prove fraud. The failure to record the deed in this case and the loans and payments of money by the wife to the husband during their married life do not in this case establish or help to establish the fraud here alleged.

Was there error in sustaining the demurrer to the evidence, or was fraud of the marital rights of the plaintiff shown by the evidence? Unlike many cases cited by appellant, there is no evidence whatever here as to any oral or written antenuptial agreement or any promise or assurance on the part of the deceased made prior to the marriage. The evidence of a son of the plaintiff is that on the day of the marriage, after the ceremony, he had a conversation with the deceased, who said they were going to live in his mother's house in town, and that she would have his farm as hers if anything happened to him. Nearly ten years later, and very shortly before the death of the husband, this same son had another conversation with

him, the son relates, to the effect that the husband wanted this son of his wife to come and look after his mother and take care of her, that he was leaving her one-half of his personal property and half of his real estate. A young man was with the son when this last conversation took place and he corroborates it. A real-estate salesman testified that he talked with the deceased four years after the marriage about buying property in Rio Grande valley and interrogated him as to his ability to purchase and that he answered he owned a farm in Harper county. This is the substance of the evidence as to the fraud, and we concur with the trial court that fraud of the plaintiff's marital rights was not shown and that the demurrer to the evidence was properly sustained.

The case of *Butler v. Butler*, 21 Kan. 521, is more nearly in line with the facts in this case than any other cited. There the court upheld the deed given to a minor daughter just before the marriage, although the correspondence prior to the marriage specifically mentioned the property as being owned by him. The case of *Green v. Green*, 34 Kan. 740, 10 Pac. 156, resulted the other way because of a definite promise and agreement as to the land and its proceeds as an inducement towards the making of the marriage contract. In the case of *Ross v. Perkins*, 93 Kan. 579, 144 Pac. 1004, deeds were given to two nieces who had been members of the family for many years, and the trial court held the deeds were in fraud of the new wife's marital right to the extent of a one-half interest in the land, and the wife appealed, insisting it was error to not give her the entire interest. The judgment was affirmed, but observe the following sentence in the opinion on page 585:

"There may be grounds for appellees to complain of the decision setting aside the transfer as to one-half of the land and giving appellant a title to one-half of it, but they have filed no cross appeal and are not in a position to allege error."

The case at bar entirely lacks anything approaching an antenuptial agreement or property inducement, and the conveyance was made to a daughter who was without means of support and to whom there existed a parental duty on the part of the father. He took with him into the marriage enterprise considerable cash and the entire rents and profits of the farm. The statements made to her son and a few others are not sufficient alone to show a fraud of marital rights.

The judgment is affirmed.